UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CHRISTOPHER MICHAEL SHELTON, SR.,

        Plaintiff,

v.                          Case No. 8:09-cv-544-T-17MAP

ST. PETERSBURG POLICE DEPT.,
et al.,

        Defendants.

_____

## **ORDER**


    Plaintiff Christopher M. Shelton, who is currently incarcerated in the Santa Rosa

Correctional Institution, Milton, Florida, filed this 42 U.S.C. § 1983 complaint in March 2009.

He sets out his allegations in the Exhibit 1-A to his complaint:

> My name is Christopher Michael Shelton, Sr. I am writing this letter to file a
> complaint on two road deputys [sic] for the Pinellas County Sheriff Office,
> Officer Graig Bornstein and his back up officer which was not mentioned on
> the report.  And a St. Pete Police Officer David DeLong.  A brutal attack
> which was caused on myself on April 29-30 2007 which cause [sic] me to be
> rushed to the hospital.  Due to a head injury which lend [sic] me disoriented,
> and blackedout [sic] and puncture wounds from fireing [sic] of Tazers which
> punctured my ear, stomach, and arm.  There was also a CAT scan take [sic]
> due to my head injury.  The event took place at my residence at 12300 62st
> No. Largo FL 33773, late at night, early morning. The alleged victim (my wife)
> placed a call to St. Pete Police Department for violation of injunction and later

in the interview a burglary which never took place which States Attorney Office caught her and witness in lies on Police Report and deposition. Since I do not live in St. Pete the PCSO was called to hold me until St. Pete officer would question me (which never took place).About the alleged crime which "I was not charged" by road dept. when Officer DeLong SPPD got there he confirmed [sic] my ID from PCSO on seen. [sic] He told me to get it.  I said I would when I turned around he grabbed me and pulled me into my witness Heather Rosenste which stood next to me and I fell in to the couch with her. The SPPD officer had my shirt and was choking me. I could not move because I w [indecipherable] pinned on Heather and the couch. So I removed my shirt and stuck my hands in the air when the PCSO Officer begin [sic] to tazer me without any warning which had no effect only one prong was in my stomach w [indecipherable] then they started tazering me more which Heather pushed the SPPD officer into a full five gallon water jug which fell on my head and spilled water on me and the floor which the voltage from the Tazers cause me to blackout and have a seizure. My mother told the officers I was having a seizure and to call for ambiance [sic] in which both officers PCSO SPPD said "quote" "He's faking it."  After that I came too [sic] on the ambiance [sic] not knowing what happen and why I was in the ambiance [sic].  The officer claims I shoved him more than once on deposition but on the police report it was once (which neither happen).  I was not arested [sic] with any battery on law enforcement officer or burgley [sic], but with "Resisting without" violents. [sic] The officers had permison [sic] to search the house given by my mother which she was a perment [sic] residencet [sic] my mother witness these attacks on me, excessive force was used by these officers why [sic] serving under city and county pay roll.  These officers had two diffrent [sic] stories to tell on deposition.

(Exhibit 1-A to Doc. 1).

As relief, Shelton seeks $1.5 million and to have the Court order an independent investigation "into the charges placed that day of the assault."

Defendant Delong filed a motion to dismiss or in the alternative motion for summary judgment (Doc. 13); Defendant Bornstein filed a motion to dismiss and an amended motion to dismiss the complaint (Doc. 15, 20); Defendant Pinellas County Sheriff's Office filed a motion to dismiss the complaint, an amended motion to dismiss the complaint, and a corrected amended motion to dismiss the complaint. (Doc. 14, 21, 27).  Shelton responded to the dispositive motions. (Doc. 25).

## STANDARDS OF REVIEW

### Standard of Review for Qualified Immunity

Qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). As long as an official's conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000). Subjective intent is irrelevant to the issue *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time of conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992). The Supreme Court has set forth a two part analysis to be applied to a defense of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The threshold inquiry a court must undertake is whether Shelton's allegations, if true, establish a constitutional violation. If no

constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. However, if a constitutional right would have been violated under Shelton's version of the facts, the next sequential step is to ask whether the right was clearly established. *Id.*; *Storck*, 354 F.3d at 1314. The *Saucier* analysis is still an appropriate consideration in qualified immunity cases but the sequence of analysis should not be regarded as an inflexible requirement in all cases. *Pearson v. Callahan*, 129 S. Ct. 808 (2009).

In *Saucier*, the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In *Hope,* the Supreme Court refined the *Saucier* query, holding that the "…salient question… is whether the state of law gave [the officers] fair warning that their alleged treatment [of Shelton] was unconstitutional." The *Hope* Court emphasized that officers sued in a section 1983 action have a "right to fair notice." 536 U.S. at 739. To demonstrate that summary judgment is appropriate on a qualified immunity defense, the defendant must show that he is entitled to judgment as a matter of law, and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro Dade County*, 972 F.2d 1230, 1233-34 (11th Cir. 1992)(citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)).

In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[A] public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002), (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)).

## Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples*

*on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences n favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**Because there are no genuine issues of material fact remaining, Defendant DeLong's motion for summary judgment will be granted.**

Standard of Review for Rule12(b)(6) Motion To Dismiss

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to

dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). As a general proposition (and setting aside for the moment the special pleading requirements that attach to § 1983 claims subject to a qualified immunity defense), the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly,* 550 U.S. 544, 127 S. Ct. at 1965.

Twombly applies to § 1983 prisoner actions. *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008). As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

A Complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). On a motion to dismiss, the Court limits its considerations to the pleadings and exhibits attached thereto. *GSW v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

**Because it appears beyond doubt that Plaintiff Shelton can prove no set of facts in support of his claims that would entitle him to relief, Defendants Bornstein's and the Pinellas County Sheriff's Office's motions to dismiss will be granted.**

DISCUSSION

Defendant DeLong

Rule 12(b), Fed. R. Civ. P., provides that a motion to dismiss asserting failure to state a claim upon which relief may be granted "shall be treated as one for summary judgment and disposed of as provided in Rule 56" if matters outside the pleading are presented by the motion to dismiss and not excluded by the court. In this case, Defendant DeLong has presented his affidavit with his motion to dismiss. Therefore, the Court will construe his dispositive motion as a motion for summary judgment.

Shelton has filed suit against Defendant DeLong, a sworn police officer with the St. Petersburg Police Department. In Paragraph 5, page 3 of 6 of his Complaint, Shelton alleges that DeLong did "Lie and manufacture charges to cover up the act of assault." In Exhibit 1-A, attached to the Complaint, Shelton states that DeLong "grabbed" him, causing him to fall on the couch and was "choking" him.

Shelton fails to state in either Paragraph 5, page 3 of 6 of the Complaint, or in Exhibit 1-A any facts showing that the force used was unreasonable or caused him any injury. Shelton fails to state any specific constitutional provision the force is alleged to have violated.

Where there are claims against government actors in their individual capacities and qualified immunity may be available to those defendants, the Plaintiff is required to specifically identify the actions taken by each such individual defendant that resulted in the alleged violation of his constitutional rights. *Harris v. District Bd. Of Trustees of Polk Comm.,* 981 Fed. Supp. 1458, 1462 (M.D. Fla. 1997). While a *pro se* Plaintiff may receive a less stringent application with regard to technical pleading requirements, public officers such as Defendant police officer DeLong are also entitled to specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003). Because qualified immunity is a defense not only from liability but also from suit, it is important for the court to ascertain the validity of the qualified immunity defense as early as possible in the litigation. *GJR Inves., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998).

On April 24, 2007, DeLong developed probable cause to arrest Shelton for 2 counts of Violation of Domestic Violence Injunction and 1 count of Violation of Probation for Sexual Battery. (Affidavit of DeLong, paragraphs 7-8). Such probable cause was based upon statements of the victim and witnesses as indicated in Defendant DeLong's report, attached to his Affidavit and sworn to.

Upon Officer DeLong's contact with Shelton, and while Officer DeLong was in the course and scope of his employment as a sworn police officer, Shelton was standing in a residence. Shelton began to step toward a rear bedroom. It was unknown if any weapons were located in the bedroom, and Officer DeLong did not wish to lose sight of Shelton. (Affidavit of DeLong, attached report, page 9). DeLong grabbed Shelton's right arm and informed him he was under arrest. Shelton pulled away, then jumped forward at Defendant Officer DeLong, shoving him in the chest and causing Officer DeLong to lose his balance. (Affidavit of DeLong, attached report, page 9). DeLong subsequently grabbed Shelton's right arm again, at which time a Sheriff's Deputy deployed his EMBW (taser). Shelton continued to resist. Another Sheriff's Deputy deployed his EMBW which stopped Shelton's resistance. Shelton then fell to his left side. Shelton was subsequently handcuffed. (Affidavit of DeLong, attached report, page 9). DeLong sworn affidavit demonstrates that he did not seek to hurt or injure Shelton and that Defendant DeLong did not violate any of Shelton's clearly established Constitutional rights.

Because DeLong has invoked qualified immunity as a defense to Shelton's claims, more than conclusory allegations are necessary to state a viable claim against Officer DeLong in his individual capacity. The Eleventh Circuit has established a heightened pleading standard when governmental officials are sued in their individual capacities. *GJR Invs., Inc v. County of Escambia,* 132 F.3d 1359, 1366-67 (11th Cir. 1998) Therefore, when claiming a civil rights violation in a § 1983 action against individual government officials, a Plaintiff must plead facts with specific particularity to overcome the official's qualified immunity and show that the official's conduct violates clearly established constitutional rights of which a reasonable person would have known. *Kyle K. v. Chapman*, 208 F.3d 940,

944 (11th Cir 2000). Shelton's Complaint (Doc.1) does not contain specific facts, as opposed to conclusions, concerning Officer DeLong's actions to show that the officer's conduct violated clearly established constitutional rights of which a reasonable person would have known.

Therefore, Officer DeLong is entitled to qualified immunity because the record facts demonstrate that he was acting within the scope of his discretionary authority and did not violate Shelton's clearly established constitutional rights of which any reasonable police officer should have known. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), and *Garrett v. Athens-Clarke County, GA*, 17 Fla. L.Weekly Fed. C 880 (2004 11th Cir. Ga.); *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

"The purpose of this immunity is to allow government officials to carry out their discretionary functions without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Since qualified immunity is "an entitlement not to stand trial or face the burdens of litigation," *Mitchell v. Forsythe*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2813, 86 L.Ed. 411(1985), questions of qualified immunity are to be resolved "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam).

Because federal law recognizes the importance of an early resolution of the applicability of the defense of qualified immunity, there are heightened pleading requirements for such civil rights cases, and under those pleading requirements, vague and

conclusory allegations in a complaint would not be sufficiently factual to support an action. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). In the present case, Officer DeLong, as a municipal law enforcement officer, had the discretionary authority to investigate suspected criminal activity and to enforce the law of the state of Florida. *See* Florida Statutes, § 943.10 (1) It is undisputed that DeLong was performing his duties as a municipal law enforcement officer and that he possessed the lawful authority to detain persons who were believed to have committed a crime.

The burden then shifts to Shelton to show that qualified immunity is inappropriate. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Vineyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). This is a burden Shelton cannot meet.  In *Pearson v. Callahan*, -- U.S.--, 129 S.Ct. 808,--, --,--L.ED.2d ---, 2009 WL 128768,  the Supreme Court recently withdrew its requirement that lower courts use a two-part analysis in determining whether qualified immunity is appropriate as set forth in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), as approved in *Brosseau v. Haugen*, 543 U.S. 194 (2004). However, the Court also recognized that the analysis is "often beneficial." Such is the case here because under the *Saucier* analysis, the Court was required to ask "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right.*" Id.* "[I]f a violation could be made out on a favorable view of the party's submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

DeLong's sworn affidavit demonstrates that he was not involved in any of the alleged wrongful conduct that Shelton claims violated his constitutional rights and, further, that DeLong is entitled to qualified immunity summary judgment because he was acting at all

times within the scope of his discretionary authority, and his conduct did not violate clearly established law. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003) (summary judgment for police officer based on qualified immunity).

Officer Graig Bornstein

Defendant Bornstein is identified as a party within the "Additional Defendants" section of the (Doc. 1, Sec. A.) Shelton alleges that "Officers, acting outside the authority, did lie and manufacture charges to coverup (sic) the act of assault" (*Id.*) The remainder of Shelton's allegations against Bornstein are contained within a single attachment to the Complaint that appears to be a copy of an internal affairs complaint regarding Shelton's arrest. (Doc. 1, Ex. 1-A)

The introduction of the exhibit letter references that Shelton is writing to "file a complaint on two road deptuys (sic) for the Pinellas County Sheriff (sic) Office . . .Graig Bornstein and his back up officer . . .". Subsequently, Shelton recounts his version of the events leading up to his arrest. According to Shelton, his wife called the St. Petersburg Police Department (SPPD) to report that Shelton was in violation of an injunction. Since Shelton did not live within the jurisdiction of the SPPD, the deputies came to his residence to hold him until SPPD Officer DeLong could question Shelton. Shelton admits that the "officers" had permission to enter the residence. Next, Shelton alleges that DeLong arrived at the residence and while DeLong was in the process of confirming Shelton's identification DeLong grabbed Shelton. Shelton describes that this caused him to be pulled into another person present at which point both fell onto a couch. Shelton alleges DeLong was choking him and that Shelton could not move because he was pinned to the couch. Shelton reacted next by taking off his shirt and sticking his hands in the air at which point he was struck by

a Taser by a deputy who is not identified. According to Shelton this Taser had no effect on him. (Doc. 1, Ex. 1-A) and the bystander then pushed the St. Petersburg Police Department officer which caused a five-gallon water jug to fall on Shelton's head. The spilled water, which along with "the voltage" from the Tasers caused Shelton to lose consciousness. (Doc. 1, Ex. 1-A) Shelton's letter closes with the accusation that "excessive force was used by these officers" while serving the city and county. (Doc. 1, Ex. 1-A) Shelton complains that he suffered a head injury and puncture wounds from the firing of the Tasers.

Shelton's complaint fails to comply with applicable pleading standards. Since Shelton's allegations against Bornstein are confined to the conduct of a law enforcement official engaged in his arrest of Shelton, it is clear that the applicability of the doctrine of qualified immunity lies at the core of any claim against Bornstein. When qualified immunity is available to a defendant, a Plaintiff must specifically identify the actions taken by each individual defendant that resulted in the alleged violation of constitutional rights. *Harris v. Polk Community College, 981 F. Supp. 1459,* 1462 (M.D. Fla. 1997) (dismissing § 1983 claims against individual defendants because heightened pleading requirement not met). Other than preliminarily identifying that Bornstein was one of the deputy sheriffs present when he was arrested, Shelton does not identify the specific actions taken by Bornstein himself that violated his constitutional rights save the conclusory allegation that "excessive force was used by these officers." This is also the closest Shelton comes to identifying which constitutional right Bornstein allegedly violated.

Since Shelton has failed to allege facts with sufficient particularity to establish a causal connection between Bornstein's actions and a constitutional violation (for the purpose of overcoming Bornstein's entitlement to qualified immunity), Shelton has not

shown the factual detail necessary to determine whether Bornstein's actions violated a clearly established right. This kind of factual detail in pleadings is the sort necessary for the prompt and proper adjudication of § 1983 claims, and without it Shelton's claim against Bornstein must be dismissed. *See GJR* at 1370.

The problems caused by the vagueness of Shelton's allegations with respect to Bornstein are further compounded by the manner in which Shelton sets them out. The claims in the narrative attachment are asserted against numerous defendants, some of which are municipal or "official capacity" defendants, and others who appear to be named in their individual capacity. While the bases for such claims arise from the same statutory language, the elements comprising a valid claim and the defenses available to be asserted on behalf of the various classes of defendants are distinct. Instead of separately stating his distinct claims against each of the varied Defendants, Shelton lumps them together into a single rambling paragraph. The failure to adequately separate the claims prevents Bornstein from fully challenging the claims that relate specifically to him, particularly with respect to the allegation that excessive force was used.

Furthermore, Shelton's complaint fails in substance to state a cause of action under § 1983. Section 1983 requires a showing that a Shelton has been deprived of a right or privilege secured by the Constitution or laws of the United States and that such deprivation was achieved under color of state law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978). Shelton has failed to meet the heightened pleading standard set out by 11th Circuit precedent. Shelton has not identified the specific constitutional amendment/right that was violated. Nonetheless, it has been recognized on numerous occasions that pro se pleadings are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519 (1972) Viewed from

-15-

that perspective it is noted that Shelton states that excessive force was used (Doc. 1, Exhibit I-A) and that law enforcement officers "did lie and manufacture charges to cover up the act of assault" (Doc. 1, Sec.A; ¶4). Construed liberally, these could be intended to frame two causes of action against Defendants for violating Shelton's Fourth Amendment rights by virtue of false arrest, and use of excessive force during that arrest.

However, Shelton cannot transform a bundle of conclusory references against Defendants into a plausible claim unless he can also allege facts showing that Bornstein acted unreasonably. Claims that law enforcement officers used excessive force are to be analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867-1868 (1989). Courts measure the reasonableness of the force applied using the Fourth Amendment's traditional objective standard: from the perspective of a reasonable officer on the scene with the attendant facts and circumstances. *Saucier*, 533 U.S. at 204-205, 121 S. Ct. at 2158; *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872; *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005).

The allegations against Bornstein do not show a basis for concluding that Bornstein took any unreasonable action while Shelton was arrested, or that this alleged unreasonable action amounted to a constitutional violation, and further that the violation was of a clearly established right. "[G]overnment officials performing discretionary functions generally are granted qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 614, 119 S. Ct. 1692, 1699 (1999) [quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)]. Therefore Shelton has failed to state a cause of action based upon the use of

excessive force by Bornstein. The only other possible claim against Bornstein that can be (liberally) construed from Shelton's Complaint is that Shelton was falsely arrested. If this is the claim that Shelton intended to assert by claiming that the charges against him were fabricated, it is one that is directly contradicted by matters properly considered in ruling on this motion.

Finally, Shelton claims that charges against him were "fabricated," thus attacking the basis for his arrest. However, this Court upon taking judicial notice of the information available from the Pinellas County Clerk of Court can readily ascertain that he was sentenced in the matter of *State vs. Shelton,* a prosecution charging Shelton with offenses occurring on April 29, 2007, the date of the arrest and misconduct alleged in the Complaint. Subsequently, on April 18, 2008, Shelton entered a plea of Nolo Contendere to these charges and was sentenced to a term of years in the custody of Florida's Department of Corrections. Since success in a damages action for false arrest by Shelton under § 1983 would question his conviction on "fabricated" charges, he must first challenge his conviction and succeed. *See Flores v. Ober,* 2008 WL 1925268 (M.D. Fla.). Defendant Bornstein's motion to dismiss must be granted.

Pinellas County Sheriff's Office (PCSO)

Although Shelton identified the PCSO as a defendant in the Complaint, Shelton fails to state any cause of action against the PCSO It is axiomatic that a county sheriff cannot be held liable solely by virtue of respondeat superior for injuries caused by his employees. *See Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). Instead of simply establishing liability as a function of the employment relationship, a § 1983 Plaintiff

must show that a constitutional violation was caused by enforcement of a policy or custom of the Sheriff. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir .2004). For these purposes, "policy" is defined as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir.1997). A "custom" has been explained as "a practice that is so settled and permanent that it takes on the force of law." *Id.* "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

In order to impose § 1983 liability on the PCSO, Shelton must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell,* 392 F.3d at 1289 (citing *Canton*, 489 U.S. at 388).

Shelton has failed to allege sufficient specific facts making it plausible from the face of the Complaint that a particular policy or custom of the PCSO caused any constitutional violation. Therefore, the Pinellas County Sheriff's Office motion to dismiss must be granted.

Accordingly, the Court orders:

1. That Defendant DeLong's motion for qualified immunity summary judgment (Doc. 13) is granted.

2. That Defendant Bornstein's amended Rule 12(b)(6) motion to dismiss (Doc. 20) is granted.

3. That the Pinellas County Sheriff's Office's corrected amended Rule 12(b)(6) motion to dismiss (Doc. 27) is granted.

The Clerk is directed to terminate all pending motions, to enter judgment against Shelton, and to close this case.

ORDERED at Tampa, Florida, on February 4, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Christopher Michael Shelton, Sr.